## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

OVERTIME ELITE, LLC,

          Plaintiff,

vs.

ANDREW GUMPER; AG LIGHT AND SOUND, INC., AG PRODUCTION SERVICES, INC.; and DOE CORPORATIONS 1-100,

          Defendants.

CASE NO.: 1:22-CV-04143-TWT

AG LIGHT AND SOUND, INC.,

          Counterclaimant,

vs.

OVERTIME ELITE, LLC,

          Counterdefendant.

## <u>RESPONSE TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM</u>

COMES NOW Defendant AG LIGHT AND SOUND INC., (hereafter "AG") by and through its undersigned counsel, and files this Response to Plaintiff OVERTIME ELITE, LLC's (hereafter "OTE") Motion to Dismiss Counterclaim.

/ / /

# I.

## <u>INTRODUCTION</u>

The parties agree that this case involves a construction dispute. This is OTE's second attempt to have AG's counterclaim dismissed. The Motion to Dismiss should be denied.

OTE hired AG to build the Overtime Elite Arena (the "Arena") on an extremely aggressive construction schedule. Although OTE now asserts various claims against AG, OTE has been using and benefitting from the Arena for over a year and half. OTE now seeks dismissal of the Amended Counterclaim, alleging that AG was not properly licensed, that the unjust enrichment and quantum meruit claims should be dismissed because the parties agree a contract exists, and that the negligent misrepresentation claim is not properly pled.

At the motion to dismiss stage of a case, the Court must accept all factual assertions as true, and all reasonable inferences are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). The pleading must only give notice of the claims. Fed. R. Civ. Pro. 8. The Amended Counterclaim sets forth five viable causes of action against OTE. With OTE's knowledge and approval, AG properly engaged Christopher Jason Smith of Steelco Buildings, Inc. to serve as the qualifying agent of AG and to

work on this project.  That is the only alleged basis for dismissal of AG's contract claims.  The unjust enrichment and quantum meruit claims are properly plead as alternative theories, and because even the contract at issue in this case shows that changes to the plans after June 24, 2021 were to be added to the minimum Contract amount.  Finally, as detailed herein, the Amended Counterclaim properly asserts a cause of action for negligent misrepresentation.  Accordingly, OTE's Motion to Dismiss should be denied in its entirety.

## II.

## <u>RESPONSE TO SUMMARY OF ALLEGATIONS</u>

OTE summarizes the allegations of the Amended Counterclaim but leaves out many important details.  The Amended Counterclaim speaks for itself, and the Court must accept as true the allegations asserted therein, not OTE's incomplete "summary" of the allegations.

The following facts are accepted as true for purposes of OTE's Motion to Dismiss:

- The Arena as proposed to AG was to be built in just five months, rather than the two years it would normally take.  (Par. 8-9.)

- The Arena needed to be removable.  (Par. 9.)

- "Crews worked at break-neck speed to keep up with an extremely ambitious and constantly changing construction schedule, making significant progress every single day." (Par. 12.)

- OTE's Arena plans were not complete and "rampant changes became the norm." (Par. 13.)

- "OTE negligently misrepresented the true scope of work, the true nature of the plans for the project, to what degree the plans would change, how change orders would be handled, and the degree to which OTE was even prepared to begin this project. Indeed, if OTE had been forthright about what it wanted (it was not) and provided the final, or even near-final, plans in the beginning (it did not), AG Light & Sound would not have agreed to this aggressive schedule and would have charged significantly more. But AG Light & Sound relied on OTE's negligent misrepresentations and moved forward full speed ahead. OTE essentially engaged in a "bait and switch" operation to have its Arena built." (Par. 14.)

- "With the knowledge and consent of OTE, AG Light & Sound engaged Christopher Jason Smith of Steelco Buildings, Inc. to serve as the qualifying agent of AG Light & Sound and to work on this project. All government and statutory requirements were met, and government approvals, building permits, and inspections were ultimately obtained and approved." (Par. 15.)

4

- OTE was "constantly moving the target" by making changes to every aspect of the project.  (Par. 16.)

- Each week AG's principal and OTE's owner's representative and executives walked the project.  (Par. 17.)

- Due to the pace of the project, OTE often communicated changes "through verbal communications rather than formally through change orders or written documents," rather than as set forth in the Contract.  AG "moved forward each day in good faith, working closely with Mr. Berger and OTE's executives." (Par. 18.)

- "The contract between the parties was not even signed until August 19, 2021 – after about 80% of the work had already been completed. The course of performance of the contract had long been established through day-to-day operations on the project."  (Par. 20.)

- OTE made progress payments until September 2021, when it stopped paying AG for the work AG had done.  Ultimately, AG's employees left the site on or around November 24, 2021 due to OTE's failure to pay.  (Par. 21.)

- "AG Light & Sound met the deadlines and OTE had a successful inaugural season with many games played in the Arena."  (Par. 22.)

- OTE continues to enjoy the benefits of the Arena. (Par. 23.)

- The parties entered into a Contract.  (Par. 24-26.)  Per the Contract, "OTE agreed to pay for each change. Given the course of performance, including constant changes that came verbally on almost a daily basis – both before and after the Contract was signed in August 2021 – there are many additional Contract terms, changes to the plans, etc. Some of those may be documented in text messages and emails; others may be documented in revised versions of plans. Many of the changes were pursuant to verbal instructions from OTE or its representatives."  (Par. 26.)

- "The Contract was entered into on August 19, 2021. By the time the Contract was signed, the project was well underway. In fact, the project reached substantial completion within about six (6) weeks of the signing of the Contract."  (Par. 28.)

- The Contract specifically provided that "[a]ny change(s) **after June 24, 2021** will be over and above the Stipulated Sum/Guaranteed Maximum of $16,000,000 and will be documented in a Change Order(s)." (Emphasis added.)  (Par. 30.)  The Design-Build Amendment contained a similar provision.  (Par. 37.)  There were many changes after June 24, 2021.

- "Although the Contract sets forth the process for changes in the work, generally the owner did not follow this process. Rather, the owner's representative, Mr. Berger, walked the property with AG Light & Sound's

representative every day and gave directives on how the work would be changed. Oftentimes, other OTE executive team members participated in these walk-throughs. This process continued after June 24, 2021 (the date after which all changes were over and above the Stipulated Sum/Guaranteed Maximum) and the signing of the contract on August 19, 2021." (Par. 35, 38.)

- The course of conduct of the parties related to changes differed from the language of the Contract. (Par. 36.)

- "Any change(s) after June 24, 2021 will be over and above the Stipulated Sum/Guaranteed Maximum of $16,000,000...." (Par. 40-41.)

- Changes to the project were common. (Par. 42.)

- In October 2021, OTE changed the chilled water system from a PVC-based system to a steel system. OTE also added pools to the project, then disregarded AG's advice to hire pool professionals and tried to order pools itself. OTE ordered the wrong pools. (Par. 43-45.)

- Despite these changes, AG continued to work on the Arena and incurred additional expenses due to OTE's continued changes. (Par. 44-45.)

- Upon reaching substantial completion, OTE began claiming faulty workmanship and refused to pay AG for work done and costs OTE had agreed to. (Par. 47-48.)

- OTE then made specific misrepresentations to AG's principal in order to induce him to assist in negotiating amounts OTE owed to AG's subcontractors.  Nearly all of AG's subcontractors had to accept less than the amount they had agreed to, harming AG's business relationships.  (Par. 49-51.)

- After claiming faulty workmanship, OTE did not allow AG to fix the alleged problems, instead OTE hired AG's subcontractors directly and deprived AG of profits.  (Par. 52.)

- Although OTE continues to reap the benefits of the Arena AG built, OTE continues to refuse to pay AG per the Contract and for work done over and above the scope of the Contract.  (Par. 53.)

- OTE has now initiated this lawsuit, claiming AG owes it $9.5 million, all while refusing to provide documentation to support its claim or even provide a complete copy of the Contract.  (Par. 27, 54-57.)

**III.**

**LEGAL STANDARD**

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed. R. Civ. P. 12(b)(6); *see Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); *Linder v. Portocarrero,* 963 F.2d 332 (11th Cir. 1992).  At the

motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)(citing *Twombly, supra*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, at 678 (citing *Twombly, supra*).

Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.,* 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied,* 474 U.S. 1082, 88 L. Ed. 2d 892, 106 S. Ct. 851 (1986). Under notice pleading, plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Id.* Under Federal Rule of Civil Procedure 8(a)(2), a pleading must only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In *Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, the United States Supreme Court held that the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.

*Id.*, at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (citing *Papasan* v. *Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).

## IV.

## <u>ARGUMENT</u>

At this early stage of the litigation, AG has met the notice pleading standard of Rule 8 for all of the causes of action.  OTE's Motion to Dismiss should be denied.

## A.   <u>AG'S CONTRACTUAL AND EQUITABLE CLAIMS ARE NOT BARRED BY GEORGIA STATUTE</u>

OTE argues that AG is barred from asserting its counterclaims because it does not hold the proper licenses.  This argument is incorrect – and disingenuous.  OTE asserts that "AG Light makes no effort to allege that it is licensed as a contractor in the state of Georgia," and that Christopher Jason Smith of Steelco Buildings, Inc. "does not hold such a license specifically for the benefit of AG Light."  (Doc. 21-1, at 10-11.)  That is the sole basis for dismissal asserted by OTE.

OTE essentially tries to "prove a negative" at the motion to dismiss stage by showing a Secretary of State printout and nothing else. Paragraph 15 of the Amended Counterclaim asserts: "With the knowledge and consent of OTE, AG Light & Sound engaged Christopher Jason Smith of Steelco Buildings, Inc. to serve as the qualifying agent of AG Light & Sound and to work on this project. All government and statutory requirements were met, and government approvals, building permits, and

inspections were ultimately obtained and approved." That paragraph also includes a link to the City of Atlanta website, showing Christopher Jason Smith and Steelco as the qualifying agent for AG. Accepting this assertion as true, as the Court must at this stage of the litigation, licensing is not an issue.

Moreover, the exhibit provided by Overtime Elite establishes that Christopher Smith was licensed as a qualifying agent for SteelCo Buildings, but it does not establish that AG lacked the licensure requirements of the Georgia statute or that Mr. Smith was not a proper qualifying agent. Under OCGA § 43-41-9(e)(2), a qualifying agent may serve as a qualifying agent for more than one entity. The qualifying agent "shall inform the [requisite Licensing Board] division having jurisdiction in writing when he or she proposes to engage in contracting . . . as a qualifying agent with another business organization," and the qualifying agent or the business "shall supply the same information to the division as required of applicants under this chapter." Thereafter, "such person shall be entitled to continue engaging in the business of residential or general contracting in accordance with and under his or her previously issued license unless and until the appropriate division determines that the person seeking issuance of the license no longer meets these requirements." OCGA § 43-41-9(e)(2).

AG has no reason – and no information – to indicate that its qualifying agent or AG did not meet all licensing obligations. Based upon an initial investigation into

the matter, AG believes Mr. Smith informed the State Licensing Board for Residential and General Contractors in writing that he proposed to engage in contracting as a qualifying agent with AG, and that Mr. Smith supplied the requisite information for licensure to the State Licensing Board for Residential and General Contractors. However, because the documents necessary to establish that Mr. Smith submitted the necessary information to the State Licensing Board for Residential and General Contractors is not in the possession, custody, or control of AG, this issue would be more appropriately addressed at the summary judgment stage, after the parties have had an opportunity to conduct discovery on the issue of licensure. Certainly, AG has sufficiently pled that it met all licensing requirements and obtained all permits.   *See* Fed. R. Civ. Pro. 8 (a).

OTE knew from the inception of their discussions with AG that AG was a Nevada corporation.   The contract between the parties confirms this.   *See* Counterclaim, Ex. 4, p. 1.  OTE was also well aware that Christopher Jason Smith of Steelco Buildings, Inc. would be the licensed professional/qualifying agent.  This is easily confirmed by checking City of Atlanta records.[1]  That is a matter of public record, and the Court may take judicial notice of that fact.   As alleged in the

---

[1] *See* the following link:  https://aca-prod.accela.com/ATLANTA_GA/Cap/CapDetail.aspx?Module=Building&TabName=Building&capID1=21CAP&capID2=00000&capID3=00EKU&agencyCode=ATLANTA_GA&IsToShowInspection=

Amended Counterclaim, OTE was well aware of this arrangement and consented to it.  A dispute arose between OTE and AG well over a year ago.  During many discussions, emails, and other communications between the parties, OTE never once asserted there was a licensing issue – because there is no licensing issue.

With respect to the Motion to Dismiss standard, AG believes that paragraph 15 of the Amended Counterclaim is sufficient to satisfy federal pleading requirements with respect to AG's licensure.  At a bare minimum, given that no discovery has been done and AG does not have access to additional information at this time, AG should be permitted to conduct discovery on this potentially key issue.  However, if the Court believes more specific pleading is necessary, AG respectfully requests that this Court grant it leave to amend the Counterclaim.  Fed. R. Civ. P. 15(a)(2) and (d). For these reasons, OTE's Motion to Dismiss should be denied.

**B.   AG'S CLAIMS FOR UNJUST ENRICHMENT AND QUANTUM MERUIT DO NOT FAIL**

OTE moves to dismiss AG's unjust enrichment and quantum meruit claims for the sole reason that the parties agree that a contract exists.  (Doc. 21-1, p. 11.) However, paragraphs 74-75 and 82-83 and the allegations of the Third and Fourth Causes of Action of the Amended Counterclaim make it clear that the unjust enrichment and quantum meruit causes of action are plead in the alternative and relate to services for which AG seeks to recover that are outside the scope of the

parties' contracts.   When there is evidence of breach of contract and unjust enrichment or quantum meruit, it is proper for the trier of fact to consider all theories. *See Rader v. H. Boyer Marx & Assocs.*, 235 S.E.2d 55, 56 (Ga. Ct. App. 1990).

In support of its argument, Overtime mentions in passing this Court's decision in *Get Me Mears, Inc. v. Cloud Performer, Inc.*, No. 20-CV-1006, 2022 WL 2787687 (N.D. Ga. Jan. 5, 2022).   In *Get Me Mears, Inc.*, before dismissing the quantum meruit claim on summary judgment (not on a motion to dismiss), this Court explained the nuances of a quantum meruit claim where there is also a contract.   The Court explained that:

> Although a plaintiff is estopped from recovering in quantum meruit where an express agreement exists, "a party is entitled to the reasonable value of services he performed which were outside the scope of the written agreement[,] and the reasonable value of extra work performed in addition to what the contract contemplated can be recovered  in quantum meruit."[5] *One Bluff Drive, LLC v. KAP, Inc.*, 330 Ga. App. 45, 766 S.E.2d 508, 513 (Ga. Ct. App. 2014) (internal quotation marks omitted and alterations adopted) (citing *Gerdes v. Russell Rowe Commc'ns, Inc.*, 232 Ga. App. 534, 502 S.E.2d 352, 355 (Ga. Ct. App. 1998)); *see also id.* at 512 ("[E]ven if there is an express contract, if services not contemplated by the original agreement become necessary to achieve the contractual objective and are rendered and accepted, the law implies and enforces performance of a promise to pay for such extra services.").

---

[5] *Compare Am. Teleconferencing Servs., Ltd. v. Network Billing Sys., LLC*, 293 Ga. App. 772, 668 S.E.2d 259 (Ga. Ct. App. 2008) (recovery under quantum meruit not allowed where claim sought the same "monies that were due under [the contract]"), *with Puritan Mills, Inc. v. Pickering Constr. Co.*, 152 Ga. App. 309, 262 S.E.2d 586 (Ga. Ct. App. 1979) (quantum meruit claim allowed for rock removal work despite express contract and written change order, where change order on excavation did not contemplate removal of hidden rock).

*Id.* at *9-10 (footnote in original.).  This Court went on to frame the issue in this way: "So the issue is whether the services [counterclaimant] seeks to recover for in its quantum meruit counterclaim are outside the scope of the parties' contracts." *Id.* That is precisely what is before the Court in the instant matter.

One of the cases cited in footnote 5 of the *Get Me Mears, Inc.* case is particularly instructive in this instance.  *See Puritan Mills, Inc. v. Pickering Constr. Co.*, 152 Ga. App. 309, 262 S.E.2d 586 (Ga. Ct. App. 1979).  In *Puritan Mills*, Court of Appeals of Georgia noted:

> Even if there is an express contract, if services not contemplated by the original agreement become necessary to achieve the contractual objective and are rendered and accepted, the law implies and enforces performance of a promise to pay for such extra services.  See generally *Gardner v. Tarpley*, 120 Ga. App. 192 (169 SE2d 690) (1969); *Conway v. Housing Authority of Atlanta*, 102 Ga. App. 333 (116 SE2d 331) (1960); *Rushing v. Jones*, 68 Ga. App. 300 (22 SE2d 675) (1942).

*Id.* at 587-88.  The Court of Appeals described the key facts, as admitted *at trial* (not at the motion to dismiss phase):

- At the time the architectural design was made and the construction contract put out for bids, no consideration was given to removal of rock and the contractor did not contemplate the removal of rock in its bid.

- Although the contract between the parties clearly set forth the work to be performed, none of the five items describing the work or the drawings reflected the removal of rock as a part of the contract.

- While each item showed the value of the work to be performed, at the time of execution of the contract, the rock was under a concrete slab and not discoverable by any inspection by the contractor.

- When rock was discovered after removal of concrete, the contractor immediately notified the owner.

- The owner told the contractor that it was important to get together with the owner's representative and discuss the rock problem and put together an estimate.

- Despite the admonition to discuss the rock problem, the parties did not negotiate or reach an agreement.

- When the rock was removed the owner observed the removal and loaned the contractor equipment.

- The removal of the rock was necessary for the contractor to perform its work under the terms of the contract, and there was no indication that the owner ever notified the contractor not to remove the rock.

*Id.* at 309-10.  The Court of Appeals of Georgia upheld the award based on quantum meruit, finding there was "no question" that the "contract work could not have been accomplished without removal of the rock."  *Id.* at 310.

That is precisely the scenario present in this case.  AG seeks to recover for work done outside the scope of the contract, as specifically asserted in the Amended Counterclaim:

- Paragraphs 12-18 of the Counterclaim explain the changing nature of the scope of work on the Project.

- Paragraph 27 of the Counterclaim asserts that "OTE has never provided a complete copy of the Contract to AG Light & Sound, and has refused requests for the same."

- Paragraph 35 explains that OTE did not follow the contract's procedures for changes in the scope of work.

- Paragraph 36 of the Counterclaim asserts that "The initial project and what was ultimately completed were significantly different."

- Paragraph 41 of the Counterclaim explains that "the parties agreed and understood that there would be additional costs and expenses," but OTE argues otherwise.  Paragraph 41 goes on to assert that "[e]very change after June 24, 2021 was to be added to the minimum Contract amount."

- Paragraph 44 describes OTE's attempt to change the chilled water system from what the original plans called for, and which allegedly was incorporated into the contract, to a more permanent system.  More specifically, paragraph 44 includes the assertion that "[e]ven though a steel-based water chilling

17

system had not been contemplated when AG Light & Sound agreed to construct the Arena, AG Light & Sound continued to work with OTE and incurred additional expenses because of OTE's addition of a steel-based water chilling system to the project."

- Paragraph 45 explains how OTE claimed deficiencies with the pools were AG's fault, but in reality, "the pools were not within AG Light & Sound's scope of work and not in the design OTE had presented to AG Light & Sound back in March 2021."

Taken as a whole, these allegations, at a minimum, relate to services AG "seeks to recover for in its quantum meruit counterclaim [that] are outside the scope of the parties' contracts." *Get Me Mears, Inc.*, *supra*, at *9-10.

The other case cited by OTE in support of this position is *Am. Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d. 1356, 1372 (N.D. Ga 2006)(Thrash, J.), for the proposition that "[u]njust enrichment is available only when there is no legal contract." (Doc. 21-1, pp. 11-12.) In addition to the fact that it is entirely proper to plead these causes of action in the alternative, as described above, the *Moe's Southwest* Grill case is easily distinguishable from the instant matter. In *Moe's Southwest Grill*, it was "evident that any benefit conferred upon [defendant] was triggered by the provisions of a contract, the validity of which neither side challenges." *Id.* at *36. As already explained above, the allegations of

the Amended Counterclaim clearly seek relief for work done outside the parties'
contract.   The quantum meruit and unjust enrichment claims should remain and
OTE's Motion to Dismiss should be denied.

## C.   AG HAS PLED SUFFICIENT FACTS TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION

The elements of a claim for negligent misrepresentation are: (1) the
defendant's negligent supply of false information to foreseeable persons, known or
unknown; (2) such persons' reasonable reliance upon that false information; and (3)
economic injury proximately resulting from such reliance.   *Hardaway Co. v.
Parsons, Brinckerhoff, Quade & Douglas, Inc.,* 267 Ga. 424, 426, 479 S.E.2d 727
(1997).  While it is admittedly "unreasonable as a matter of law to rely on predictions
or statements of opinion," *Next Century Communs. Corp. v. Ellis*, 214 F. Supp. 2d
1366 (N.D. Ga. 2006) (citing *Murray v. Xerox Corp.,* 811 F.2d 118, 121-23 (2d Cir.
1987); *Synergy v. Worldwide, Inc., v. Long, Haymes, Carr, Inc.,* 44 F. Supp. 2d 1348,
1356-57 (N.D. Ga. 1998)), the misrepresentations identified by AG are not
predictions or opinions.   To the contrary, they are specific allegations of
misrepresentations made by OTE to AG to induce AG to act.

### 1.    OTE Is on Notice of Its Misrepresentations

It seems OTE would have this Court read each paragraph of the Amended
Counterclaim in a vacuum, without considering the other paragraphs.   That is

improper.   The Court must consider all the paragraphs of the Amended Counterclaim.  When the Court reads all of the allegations collectively, it becomes apparent the negligent misrepresentation claim should remain.

Paragraph 14 specifically identifies representations, including "the true scope of work, the true nature of the plans for the project, to what degree the plans would change, how change orders would be handled, and the degree to which OTE was even prepared to begin this project."  Counterclaim at par. 14.  It goes on to reference OTE's misrepresentations about what OTE wanted, what the plans for the building really were intended to be, and AG's reliance on those representations.

Paragraphs 44-46 also describe some of OTE's negligent misrepresentations. In paragraph 44, AG describes another misrepresentation that OTE had not disclosed to AG at any point before October 2021 – that it intended to have a steel-based chilled water system installed rather than the PVC-based chilled water system that OTE told AG would be installed.  Likewise, paragraph 45 explains that OTE had not disclosed to AG that pools would be installed and AG's reliance on that non-disclosure.   Paragraph 46 mentions that the misrepresentations described in paragraphs 44 and 45 are just two misrepresentations made by OTE.

Paragraphs 49-51 include negligent misrepresentations OTE made to AG related to OTE's attempts to negotiate payments for less than the agreed-upon rate with AG's subcontractors.   One misrepresentation is specifically described in

paragraph 49 and includes "telling Andrew Gumper, AG Light & Sound's principal, that if he assisted in negotiating pay reductions with AG Light & Sound's subcontractors, OTE would make good on its obligation to pay AG Light & Sound for the work AG Light & Sound had completed."  Paragraphs 50 and 51 cite facts related to AG's reliance upon OTE's misrepresentations and damages suffered by AG as a result of the misrepresentations.

In its Motion to Dismiss, OTE alleges that the allegations of paragraph 49 and 51 amount to failure to live up to a promise and are not actionable.  (Doc. 21-1, p. 15 (citing *Eason v. PNC Bank, N.A.*, No. 12-CV-1932, 2013 WL 12107722, at *3 (N.D. Ga. Jan. 24, 2013) and *Moran Cap., LLC v. JP Morgan Chase Bank, N.A.*, No. 12-CV-46, 2012 WL 13028923 at *7 (N.D. Ga. Aug. 1, 2012).)  However, Georgia courts recognize an exception to the rule that failure to live up to future promises is not actionable – "for promises as to future events made with the present intention not to perform."  *Moran Cap., LLC*, *supra*, at *19 (quoting *Hill v. Delta Air Lines, Inc.*, 143, Ga. App. 103, 237 S.E. 2d 597, 599 (1977).  Paragraphs 49 and 51 demonstrate that OTE had no intention of performing – i.e., paying AG what it was due – at the time it told Mr. Gumper it would pay AG if he assisted with the subcontractor issues.

Finally, OTE alleges that paragraph 55 "does not contain any factual allegations."  (Doc. 21-1, pp. 15-16.)  While paragraph 55 does not contain new

assertions of negligent misrepresentations, it references the prior paragraphs that have been addressed above.

OTE is well aware of the allegations of negligent misrepresentation against it. That is all that is required. Fed. R. Civ. P. 8(a)(2).

### 2.   The Allegations Are Not Just "Threadbare Recitations"

OTE alleges that the amended counterclaim only makes "threadbare recitals" of the other elements of a negligent misrepresentation claim. (Doc. 21-1, p. 16.) OTE cites the *Next Century* case to support its motion, claiming that the factual scenario in that case is the same as in this case. However, OTE's creative use of ellipses leaves out the one key fact – that in the *New Century* case, the only allegation related to reasonable reliance was based on the position of the person making the representation within the defendant company and nothing else. *New Century*, 214 F. Supp. 2d at 1370. That case is not on par with the facts asserted in this case. To begin with, the Fifth Cause of Action reincorporates paragraphs 1-57 of the Amended Counterclaim, and they must be considered in analyzing the cause of action for negligent misrepresentation as set forth in paragraphs 89-96. Paragraph 91 even specifically references certain of the factual assertions.

Again, OTE seems to read each paragraph individually in a vacuum, rather than all of the paragraphs collectively. Paragraph 14 specifically describes the reasonable reliance AG placed on OTE's misrepresentation – AG agreed to an

aggressive schedule for the project, charged a price much lower than it would have if OTE had been forthright, and "moved forward full speed ahead."

Similarly, paragraphs 44-46 also demonstrate that, relying on OTE's misrepresentations, AG had agreed to do the work based on negligent representations, and continued to move forward even when it became apparent that OTE had misrepresented some of the scope of work to be completed.

As explained above, paragraphs 49-51 include negligent misrepresentations OTE made to AG related to OTE's attempts to negotiate payments for less than the agreed-upon rate with AG's subcontractors and Mr. Gumper's reasonable reliance on those misrepresentations.

Lastly, OTE alleges that AG failed to plead damages.  (Doc. 21-1, p. 17.)  As noted above, at this stage of the case, the facts as alleged must be accepted as true, and the reasonable inferences must be construed in the light most favorable to AG. *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). General damages need only be plead generally.  *See* Fed. R. Civ. P. 8(a).

But AG has even asserted enough for the somewhat higher pleading standard related to special damages.  *See* Fed. R. Civ. P. 9(g).  In *No Witness, LLC v. Cumulus Media Partners, LLC*, 2007 U.S. Dist. LEXIS 83761 (N.D. Ga. November 13, 2007), the court considered a motion to dismiss at the initial pleading stage where the

defendant asserted that plaintiff had failed to allege special damages with specificity.

*Id.* at *40.  The court stated:

> However, there is a big difference between ***pleading*** special damages
> and ***proving*** special damages. This Court refuses to require plaintiff to
> supply proof of special damages to survive a motion to dismiss.
> According to Georgia law, the amount and specifics of the damage and
> causation are matters of proof. *Peacock Const. Co. v. Erickson's, Inc.*
> *et. al,* 174 S.E.2d 276, 277, 121 Ga. App. 544, 544 (1970). The Georgia
> Court of Appeals stated that "special damage is a matter of proof and
> allegations thereof are not essential to the statement of a claim." *Id.*
> (citing *Tench v. Ivie,* 173 S.E.2d 237, 121 Ga. App. 114 (1970)). In
> addition, requiring more than an allegation of damage at this stage in
> the litigation would be contrary to Rule 8.  *See* FED R. CIV. P. 8(a)
> Therefore, proving the specifics of this allegation...is a matter of proof,
> which plaintiff will have to address as this litigation moves forward.
>
> According to the Eleventh Circuit and *Twombly,* "the question
> [now] is whether [plaintiff] has alleged enough facts to suggest, raise a
> reasonable expectation of, and render plausible the fact that" he
> suffered and will be able to show special damage as a result of
> defendant's [conduct]. *Watts v. Florida Intl Univ.,* 495 F.3d 1289, 1295
> (11th Cir. 2007). The answer to that question is "yes." Here, plaintiff
> has pled allegations that plausibly suggest that [actionable conduct]
> occurred and that it caused him damage.... He has alleged damage,
> which will be capable of monetary assessment, and causation is also
> alleged and plausibly provable.

*Id.* (emphasis added).  Further, such general allegations as "economic and non-
economic damages" or special damages including prospective employers being
deterred from employing a plaintiff were sufficiently specific survive a motion to
dismiss.  *Godby v. Marsh USA, Inc*., 2007 U.S. Dist. LEXIS (N.D. Ga July 5, 2007).

The following paragraphs make specific reference to the types of damages AG suffered:

- Paragraph 26 (references OTE's agreement to pay for all changes);

- Paragraph 30 ("[a]ny change(s) after June 24, 2021 will be over and above the Stipulated Sum/Guaranteed Maximum of $16,000,000");

- Paragraph 41 (parties agreed there would be additional changes for changes after June 24, 2021);

- Paragraph 44 (AG incurred additional expenses);

- Paragraph 45 (AG incurred additional expenses);

- Paragraph 53 (OTE has failed to pay for work done by AG "beyond the scope of the Contract").

AG has provided proper notice of damages to OTE.  *Donovan v. Lynn's Food Stores, Inc.*, 1981 U.S. Dist. LEXIS 17373 (S.D. Ga. October 8, 1981) (finding that "amounts of withheld wages are details properly left to the discovery process" and thus denying a motion for more definite statement).

AG has properly pled a claim for negligent misrepresentation.  OTE's Motion to Dismiss should be denied.

If the Court dismisses AG's negligent misrepresentation claim, it should do so without prejudice.

**D.** **AG'S CLAIM FOR ATTORNEYS' FEES IS NOT DERIVATIVE OF ITS OTHER CLAIMS**

The only basis for OTE's request to dismiss the attorney's fee claim is that the claim is "derivative of other claims," and therefore, OTE argues, if the Court dismisses all of AG's claims, the Court should dismiss the attorney's fee claim as well. AG has addressed each cause of action in turn and demonstrated why AG has stated valid claims. The attorney's fee claim survives as well. OTE's Motion to Dismiss should be denied.

**V.**

**CONCLUSION**

As explained in detail herein, OTE's Motion to Dismiss should be denied in its entirety.

DATED this 10th day of March, 2023.

*(Signatures on following page)*

Respectfully submitted,
**SWIFT, CURRIE, MCGHEE & HIERS, LLP**

*/s/ Janie Hagood*

By:   _____

JANIE HAGOOD, ESQ.
State Bar No.: 616570
Swift, Currie, McGhee & Hiers, LLP
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309-3231
(404) 874-8800 Phone
(404) 888-6199 Fax
*janie.hagood@swiftcurrie.com*
**Counsel for the Defendants Andrew Gumper, AG Light and Sound, Inc., and AG Production Services, Inc.**
**Counsel for Counterclaimant AG Light and Sound, Inc.**


**ALDRICH LAW FIRM, LTD.**

*/s/ John P. Aldrich, Esq.\**

_____

JOHN P. ALDRICH, ESQ.
Nevada Bar No. 6877
Aldrich Law Firm, Ltd.
7866 West Sahara Avenue
Las Vegas, Nevada 89117
(702) 853-5490  Phone
(702) 227-1975  Fax
*jaldrich@johnaldrichlawfirm.com*
**Counsel for Defendants Andrew Gumper, AG Light and Sound, Inc., and AG Production Services, Inc.**
**Counsel for Counterclaimant AG Light and Sound, Inc.**

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I have electronically filed and served the foregoing **RESPONSE TO PLAINTIFF'S MOTION TO DISMISS** with the Clerk of Court using CM/ECF system and upon opposing counsel via electronic mail as follows:

Jason D. McLarry, Esq.
Wheaton P. Webb, Esq.
TROUTMAN PEPPER HAMILTON SANDERS, LLP
Bank of America Plaza
600 Peachtree Street NE, Ste. #3000
Atlanta, GA 30308
Jason.McLarry@troutman.com
Wheaton.Webb@troutman.com
*Attorneys for Plaintiff Overtime Elite, LLC*

John P. Aldrich, Esq.
ALDRICH LAW FIRM, LTD.
7866 West Sahara Avenue
Las Vegas, Nevada 89117
jaldrich@johnaldrichlawfirm.com
*Admitted pro hac vice*
*Counsel for Defendants Andrew Gumper, AG Light and Sound, Inc., and*
*AG Production Services, Inc.*
*Counsel for Counterclaimant AG Light and Sound, Inc.*

This 10th day of March, 2023.

*(Signature on following page)*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,
**SWIFT, CURRIE, MCGHEE & HIERS, LLP**

*/s/ Janie Hagood*

By:    _____

JANIE HAGOOD, ESQ.
State Bar No.: 616570
Swift, Currie, McGhee & Hiers, LLP
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309-3231
(404) 874-8800 Phone
(404) 888-6199 Fax
*janie.hagood@swiftcurrie.com*
*Counsel for the Defendants Andrew Gumper, AG Light and Sound, Inc., and AG Production Services, Inc.*
*Counsel for Counterclaimant AG Light and Sound, Inc.*

4867-7110-2806, v. 1